LARKIN CREECH ET AL. v. A. M. DAVIDSON.

No. 270.

**State School Land—Failure of Title to Part—Rights of Separate Purchasers.**—A. purchased from the State the east half of a survey of school land, and B. the west half, no dividing line of the two halves having actually been put on the ground. Afterwards it was discovered that nearly all the east half was in conflict with a prior location already patented. and A. thereupon brought suit against B. for such part of the west half as would make an equal division of the land not in conflict. *Held*, that A. was not entitled to recover.

APPEAL from Fisher. Tried below before Hon. WM. KENNEDY.

*Beall, Ragland & Beall*, for appellants.—1. Two grantees having purchased from a common grantor the east and west halves respectively of a survey which contained, according to the original work by which the

land was so sold, 640 acres of land, the grantees purchasing 320 acres each of said survey, and not in privity with each other, and believing at the time of such purchase that the survey contained 640 acres of land, the one can not hold the other in any way liable for the losses which he may sustain by reason of an erroneous or fraudulent sale to him by the grantor, but must look alone to the grantor for redress; nor can one of said grantees compel the other to share losses sustained by him by reason of a conflict of his half of said survey with an older and patented survey. White v. Kingsberry, 77 Texas, 610; 37 Texas, 7; 68 Texas, 595; 25 Texas Supp., 403; 24 Texas, 349.

2. The intention of the parties as to the land sold and bought must govern as to the land actually sold; and the rules and regulations of the law under which sales are made of public lands will be taken into consideration in arriving at the intention of the State in vending such lands. Acts 20th Leg., p. 84, sec. 5; 18 Texas, 164.

*Thurmond & Yantis*, for appellee.—1. Appellee purchased under the description of the east half of the section, and he is entitled to the east half of whatever the section may contain. The division line between the east half and west half has never been located, so that the description of " east half " being the only description, it must govern, and be construed to mean half of the land actually in said survey.

2. The doctrine of privity between appellant and appellee, as to their respective purchases of one-half the section in controversy, has no application in this case. It is purely a question of description and of equity as to whether this land should be divided equally between appellant and appellee, there being no designated boundary between the east and west halves.

STEPHENS, Associate Justice.—According to the original work of the Houston & Texas Central Railway Company in laying off block number 2, in Fisher County, section 114 contained 640 acres. This work was done on the ground, and the northwest corner of this section was well established. It does not appear that any of the other corners or lines were marked. The course and distance called for gave a full section. In 1887 appellee purchased from the State the east half of the section as thus constructed, and, in 1889, appellant Creech the west half. It was afterwards discovered that all of the east half except about 67 acres was covered by the John Chumney survey, located and patented long prior to the survey in question. In making these sales the Commissioner of the Land Office, as well as the purchasers, had no knowledge of the conflict, but believed the section to be full. The purchasers made their respective settlements and improvements on this theory. Upon discovering the shortage in the last half, appellee sued for and recovered 126 acres of the west half; hence this appeal. The case is without controverted issues of fact.

Our conclusion from the statement of facts and the court's findings of fact, which we approve, is, that the first purchaser from the State did not intend to buy, and that the State's officers did not intend to sell him, any part of the west half of said section as originally laid off and as understood to be bounded at the date of said sale. It follows from this conclusion, we think, that he was not entitled to recover from appellants any part of said west half.

It is very clear, that if appellee had made this survey and located a certificate on its east half, he could not have claimed any part of the west half under such location, upon discovering a conflict with an older survey. Having selected and undertaken to appropriate by purchase from the State land as previously surveyed for another, he *is in no better* position than if he had originally laid off the land himself. The fact that a vendor does not have title to all the land intended to be sold, does not authorize the purchaser to claim other land of the vendor not the subject of the bargain and sale. In buying the 320 acres, the east half of a section as actually laid off on the ground, at a specified price per acre, appellee fixed his western boundary as definitely, in the minds of the contracting parties, as if the dividing line had been run on the ground. As in all other controversies about boundary, the intention of the parties, as gathered from the language of their contract and other proper sources, is controlling. Arnold v. Cauble, 49 Texas, 527; Koenigheim v. Miles, 67 Texas, 122.

The Act of 1887, under which these purchases were both made, conditioned the right to purchase this class of school land (agricultural) on actual settlement. Hittson v. Glasscock, 2 Texas Civ. App., 617. Such settlement, when once made, and followed by a purchase, could not be floated so as to include land not intended at the date of such settlement and purchase to be covered thereby. The intention to occupy the very land entered upon was an essential part of the settlement. If, through conflict of boundary and consequent mistake, less land was appropriated than appellee applied for, the law provided a remedy; and the Land Commissioner, in this case, offered to cancel the sale and restore that part of the purchase money, with interest, already paid. When appellant Creech settled upon the west half, it was entirely vacant and not even claimed by appellee; and by his settlement and purchase he acquired the superior right thereto.

We conclude that it would be neither legal nor equitable to permit appellee's recovery to stand. The judgment will consequently be reversed and here rendered for appellants.

*Reversed and rendered.*

Delivered November 15, 1893.