**LAUDERDALE et al. v. LEE et al.**
**(No. 1631.)**

(Court of Civil Appeals of Texas. El Paso.
May 29, 1924. Rehearing Denied
June 26, 1924.)

**1. Evidence ⚖➡461(3)—Parol evidence admissible to show intention of parties as to land conveyed by deed.**

Extraneous parol evidence *held* admissible to show true intention of parties to deeds, though there was no uncertainty nor ambiguity in description contained in deeds, where by virtue of conflict between surveys uncertainty as to what was intended to be conveyed existed.

**2. Appeal and error ⚖➡1027—Proposition held to present no error in view of relief granted.**

Proposition that plaintiffs' cause of action to reform deeds was barred by limitations presents no error, where no relief by way of reformation was granted and it was not necessary to plaintiffs' right of recovery.

**3. Appeal and error ⚖➡880(3) — Failure of court to hold another defendant cannot be complained of.**

That defendant oil company was not held liable to landowners for conversion of oil was a matter of which no complaint could be made by other defendants who were paid proceeds of oil and became liable to plaintiffs as for money had and received.

**4. Limitation of actions ⚖➡182(2) — Limitations must be pleaded.**

Limitations must be pleaded to be available.

Harper, C. J., dissenting.

Appeal from District Court, Taylor County; W. R. Ely, Judge.

Action by R. Q. Lee and others against B. H. Lauderdale and others. Judgment for plaintiffs, and defendants appeal. Reformed and affirmed.

J. R. Stubblefield, of Eastland, and B. W. Patterson, of Cisco, for appellants.

Leaverton & Hardy, J. L. Goggans, and G. O. Bateman, all of Breckenridge, and John E. Kilgore, of Wichita Falls, for appellees.

HIGGINS, J. On April 23, 1920, R. Q. Lee, C. M. Caldwell, B. S. Walker, G. T. Liles, H. C. Roberts, Will Black, Jack Black, S. T. Swenson, N. N. Rosenquest, Fred W. Frost, and S. & G. Company, a corporation, filed this suit against B. H. Lauderdale and wife, Fannie F. Lauderdale, J. R. Stubblefield, and the Texas Company, in the ordinary form of trespass to try title to an undivided three-fourths interest in and to all of the minerals in, on, and under, and that may be produced from, a tract of land containing 43.8 acres, subject to the terms of an oil and gas mining lease held by the Texas Company.

Omitting the first paragraph of the peti-tion, which gives the names and residences of the plaintiffs and defendants, the petition reads:

"(2) That heretofore, to wit, on or about the 1st day of January, A. D. 1920, the plaintiffs were lawfully seized and possessed of the following described land and premises situated in Stephens county, Tex., holding and claiming the same in fee simple, to wit: Being a part of the S. E. ¼ of section No. 34, block No. 5, Texas & Pacific Railway Company land, as the same was originally surveyed but being a part of section No. 35, block No. 5, Texas & Pacific Railway Company as patented, described by metes and bounds as follows: (Here follow field notes of the land.)

"(3) That the plaintiffs on said date, and for a long time prior thereto, claimed and were the owners of all of an undivided three-fourths interest in and to all of the minerals in, on, and under, and that may be produced from, the above-described land, subject to the terms of an oil and gas mining lease held thereon by the defendant the Texas Company. That thereafter, on the date and year last aforesaid, the defendants unlawfully entered upon said premises and ejected plaintiff therefrom and unlawfully withheld from them the possession thereof, to their great damage in the sum of $50,000.

"(4) And plaintiffs would further represent and show to the court that the Texas Company is the owner and holder of a mineral lease on the above-described tract of land, which lease is of record in volume 39, page 24, of the deed records of Stephens county, Tex.; that the said defendant, the Texas Company is in possession of said land, and has drilled and is drilling wells on said land for the discovery and production of oil, gas, and other minerals; that the said defendant, the Texas Company, has produced and extracted large quantities of oil from said land, the amount of which is unknown to these plaintiffs, but that these plaintiffs are the owners of and are entitled to three-fourths of one-eighth of all of the oil, which the said defendant, the Texas Company, has produced or extracted or may produce or extract from said land, but that the defendant, the Texas Company, though often requested, has failed and refused to turn over to these plaintiffs their portion of the oil, or to pay plaintiffs therefor, to plaintiffs' damage in the sum of $50,000.

"Wherefore, premises considered, these plaintiffs pray that the defendants and each of them be cited to appear and answer this petition, and that upon final hearing hereof plaintiffs have judgment against said defendants and each of them, except the Texas Company, for an undivided three-fourths interest in and to all of the minerals, in, on, and under, and that may be or has been produced from, said land above described, and that plaintiff have judgment against the Texas Company for an undivided three-fourths of one-eighth of all that has been or may be produced from said land by the said Texas Company, and that these plaintiffs have judgment for title and restitution of an undivided three-fourths interest, in and to all minerals, in, on, and under the above-described premises, and for their damages, for cost or suit, and for such other and further relief, both general

---

⚖➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and special, as they may be justly entitled to, either in law or in equity, and will ever pray."

On June 1, 1920, the Texas Company answered setting up that the subject-matter of the suit was the right and title to the royalty from minerals produced and saved from the land described in the petition by that defendant under the terms of a mineral lease held by it upon the land, and that Mrs. N. E. Lauderdale, a widow, Edith M. James, and her husband, T. M. James, and Jennie D. Lauderdale, were claiming some interest in such royalty and were necessary parties; that under its lease upon the land it had brought in one well and produced oil therefrom of the value of $188,526.29, and under the terms of the lease contract and according to assignments of mineral interest it had paid the royalty interest to B. H. Lauderdale and wife, Fannie F. Lauderdale, J. R. Stubblefield, Mrs. N. E. Lauderdale, Edith M. James and T. M. James, and Jennie D. Lauderdale, stating the fractional part paid to each of said parties, and in said answer the Texas Company asked that Mrs. N. E. and Jennie D. Lauderdale, Edith M. and T. M. James, be made parties to the suit, and that upon trial it go hence and, in the alternative, if the plaintiffs recovered any sum against it by reason of their ownership of any part of the royalty, it have judgment over against the Lauderdales, Stubblefield, and the Jameses.

The Texas Company, on July 6, 1922, filed a first amended answer, which repeats the defensive allegations of its original answer and certain other defenses, which need not be detailed further than to say that it assumed the attitude of a stakeholder as to the moneys then in its hands.

B. H. Lauderdale answered the petition by general denial and plea of not guilty, and to the cross-action of the Texas Company by general demurrer and general denial. Stubblefield answered by general demurrer and general denial.

Nannie E. Lauderdale, Edith M. and T. M. James, and Jennie D. Lauderdale adopted the answers of B. H. Lauderdale.

On December 13, 1922, the plaintiffs filed their first amended original petition complaining of the original defendants, B. H. and Fannie Lauderdale, J. R. Stubblefield and the Texas Company, containing the same allegations as was contained in its original petition, and in addition thereto the following:

"And in addition to and in connection with plaintiffs' action in trespass to try title and without waiving any of the rights or titles which they may have and be enabled to show through said trespass to try title, plaintiffs allege the following facts:

"Plaintiffs say that if for any reason the description in any of the deeds in plaintiffs', or any one of them, chain of title is ambiguous, that it was the intention of all the parties to said instruments to include in the description of said deed or deeds the land involved in this suit, and, further, that if there is any such ambiguity these plaintiffs and each of them will offer parol testimony to prove such intention, and that the description given does in fact include the land involved in this controversy.

"These plaintiffs further allege that B. H. Lauderdale is the common source of title to the property here sued for, and that plaintiffs derived title through the said B. H. Lauderdale as set out in this petition, and also by regular chain of title from such common source.

"And the plaintiffs still further allege that if the deeds, or any of them, within the chain of title of plaintiffs, or any of them, do not contain the land here sued for, that it was the intention of all parties that the land herein sued for be included in said deed or deeds, and that such omission was due to the fraud of the defendants, or by accident or mistake of all the parties, and such deed or deeds should be corrected and reformed in order to show that they do in fact contain the land herein involved.

"Plaintiffs allege that immediately prior to the purchase of their respective interests in the land involved herein by W. E. Smith, grantor of a portion of these plaintiffs, and by S. D. Liles, grantor of other plaintiffs herein, that the defendant B. H. Lauderdale, then the owner of the premises involved, pointed out the land sued for as a portion of the southeast quarter of section 34, said designation and representation being made to the said W. E. Smith and also to the said S. D. Liles, and that the said defendant B. H. Lauderdale intended that the said Smith and Liles believe and rely upon the representations and designation, and that the said Smith and Liles did in fact believe and rely upon said designation and representations and were induced thereby to purchase the premises involved in this suit and the southeast quarter of said section 34, and that the said B. H. Lauderdale made such representations and designation to the said Smith and Liles with the intention to induce the said Smith and Liles to make the purchase of the land involved and the southeast quarter of section 34, and that the said B. H. Lauderdale had reason to know, and did know, the boundaries of the southeast quarter of section 34 and of section 35, block 5, Texas & Pacific Railway Company lands, Stephens county, Tex., and of all his own property. And plaintiffs would suffer great injury if defendants or any of them were allowed to assert the land involved is not included within the description in each of said deeds, and defendants and each of them are estopped to levy the land involved is not within and covered by the deeds to said Smith and S. D. Liles and their grantees.

"And plaintiffs would further represent and show to the court that the Texas Company is the owner and holder of a mineral lease on the above-described tract of land, which lease is of record in volume 39, page 24, of the deed records of Stephens county, Tex.; that the said defendant, the Texas Company, is in possession of said land and has drilled and is drilling wells on said land for the discovery and production of oil, gas, and other minerals; that the said defendant, the Texas Company, has produced and extracted large quantities of oil from

said land, the amount of which is unknown to these plaintiffs, but that these plaintiffs are the owners of and are entitled to three-fourths of one-eighth of all of the oil which the said defendant, Texas Company, has produced or extracted or may produce or extract from said land, but that the defendant, the Texas Company, though often requested, has failed and refused to turn over to these plaintiffs their portion of the oil or to pay the plaintiffs therefor, to plaintiffs' damage in the sum of $50,000.

"Wherefore, premises considered, the defendants having heretofore been cited and appeared herein, these plaintiffs pray that upon final hearing hereof plaintiffs have judgment against each and all of said defendants except the Texas Company, for an undivided three-fourths interest in and to all of the minerals in, on, and under, and that has been produced and may hereafter be produced on, the land hereinbefore described, and that plaintiffs have judgment against the Texas Company for an undivided three-fourths of a one-eighth royalty interest of all of the minerals that have been or may hereafter be produced from said land by said Texas Company and for the reasonable cash market value thereof at the time same were produced at the place of its production, to wit, on said tract of land; and that these plaintiffs have judgment for title and restitution of an undivided three-fourths interest in and to all minerals in, on, and under the above-described premises, and for their damages; and in case it be determined that for any reason any deed or deeds in the chain of title of the plaintiffs, or either of them, to the land involved herein, does not include within the description appearing therein such land, then that such deed or deeds be corrected and reformed in this proceeding as to include such land and premises and title vested in plaintiffs accordingly; and that plaintiffs have judgment for costs of suit and for all other relief, general or special, legal or equitable as they may be entitled to receive under the law and the facts."

Upon the same day, December 13, 1922, the plaintiffs filed a trial amendment setting up:

"Plaintiffs say that the defendant B. H. Lauderdale, his grantors and predecessors in title, owned the land and mineral interest described in plaintiffs' first amended petition and had good title thereto on the 13th day of February, 1917, and owned the interest which he conveyed by deed to S. D. Liles on the 26th day of March, 1918, when he undertook to sell and convey by general warranty deeds the mineral interests involved in this suit, because plaintiffs say that the said B. H. Lauderdale, his grantors and predecessors in title, at said dates had held said land in peaceable and adverse possession, cultivating, using, and enjoying the same as their own for a period of more than ten years preceding the 13th day of February, 1917, and preceding the 26th day of March, 1918; and plaintiffs herein claim and hold the interest claim by each under a regular chain of warranty deeds from their respective grantors by the terms of which said grantors warranted the title to the interest claimed by each. And plaintiffs now here plead the said statutes of ten years' limitation of Texas for the purpose of showing good title to land involved in this suit in the said B. H. Lauderdale, his grantors and predecessors in title, at and prior to the 13th day of February, A. D. 1917, and the 26th day of March, A. D. 1918, except as to that part conveyed by him on February 13, 1917.

"Plaintiffs further show to the court that they have only learned of the fraud, accident, and mistake complained of by them in this proceeding within two years from this date, and that they could not by the exercise of reasonable diligence have learned thereof sooner.

"Plaintiffs further show to the court that they have only learned of the fraud, accident, and mistake complained of by them in this proceeding within four years from this date, and that they could not by the exercise of reasonable diligence have learned thereof sooner.

"Wherefore plaintiffs pray as in their former pleading herein."

Upon the same date, December 13, 1922, all of the defendants Lauderdale, Edith M. and T. M. James, and J. R. Stubblefield, filed an amended answer to the first amended original petition of the plaintiffs consisting of demurrer to the special pleadings of the plaintiff and by general denial, plea of not guilty, special plea of laches, and the two and four years' statutes of limitation, against the allegations of fraud, accident, and mistake made by the plaintiffs.

On the same day, December 13, 1922, the plaintiffs filed their first supplemental petition in reply to the first amended original answer of the Texas Company and demurred generally to said answer, and by general denial, and further that the Texas Company did not enter upon the lands and produce oil therefrom in good faith, but did so with notice actual and constructive of the rights of plaintiffs; wherefore they were entitled to recover against it as originally pleaded and, further, if they were not entitled to recover against the Texas Company for the value of the oil produced, for which the Texas Company had paid other parties, as alleged in its amended answer, then the plaintiffs—

"are entitled to recover judgment against such other parties for the value of such payments, if any, so made to them, with interest thereon at the rate of 6 per cent. per annum from the date such payments were made, by reason of the fact that such other parties have received from the Texas Company funds which in fact belonged to these plaintiffs and should have been paid to these plaintiffs instead of to such other parties.

"(5) Premises considered, these plaintiffs pray as in their other pleadings herein, and in addition thereto they ask for judgment as against the Texas Company for the value of all the oil and gas produced by it from the premises involved herein, at the reasonable market value of the same at the time and place of their production, and also pray that in case it should be determined that these plaintiffs are not entitled to recover judgment against the Texas Company for the value of such oil and gas for which it has made payment to other parties,

as alleged, then that these plaintiffs have judgment against such other parties, jointly and severally, for the amounts received by them respectively, with interest thereon at the rate of 6 per cent. per annum from the date such payments were made, respectively, as the same will be shown upon the trial hereon, including the dates and amounts of such payments, and that these plaintiffs have such other and further relief, general or special, legal or equitable, as they may be entitled to receive under the law and the 'facts."

On December 13, 1922, the defendants Lauderdale, Edith M. and T. M. James, filed a supplemental answer in reply to the plaintiff's supplemental petition pleading the two years' statute of limitation in bar of a recovery by the plaintiffs on account of the payment made to them by the Texas Company.

On December 13, 1922, the Texas Company filed a supplemental answer to the first amended petition of the plaintiffs demurring to that portion setting up fraud, accident, and mutual mistake, general denial, plea of not guilty, and the two and four years' statute of limitation, and laches in bar of the allegations of fraud, accident, and mistake, and the relief sought to be based thereon.

The case was submitted to a jury upon three issues, as follows:

(1) "Did the defendant B. H. Lauderdale point out the land in controversy to S. D. Liles as a part of the land to be conveyed by the mineral deed from Lauderdale to Liles?"

(2) "Did the defendant Lauderdale by his mineral deed to W. E. Smith intend to convey to him an interest in the 43 acres of land in controversy?"

(3) "Did the defendant Lauderdale by his mineral deed to S. D. Liles intend to convey to him an interest in the 43 acres of land in controversy?"

These questions were all answered in the affirmative.

Upon the verdict judgment was rendered May 15, 1923, in favor of the plaintiffs against the Lauderdales, Edith M. and T. M. James, and Stubblefield, subject to the lease of the Texas Company for an undivided three-fourths interest in and to all the minerals in, on, and under the 43.8-acre tract of land described in the petition: In favor of the plaintiffs against the Texas Company for $5,188.45, the value of the oil produced and marketed by it from April 14, 1920, to the date of judgment; in favor of the plaintiffs against Stubblefield, B. H., Mrs. N. E., and Jennie D. Lauderdale, Edith M. and T. M. James, severally, for the respective amounts theretofore paid by the Texas Company to them, respectively for oil theretofore produced from the premises, and, further, a general judgment that all pleas and claims not expressly allowed were denied and that no party recover as against any other party

264 S.W.—36

except what was expressly allowed in the judgment.

From the judgment rendered the Lauderdales, Edith M. and T. M. James, and Stubblefield appeal.

Section 35 in block 5, Texas & Pacific Railway Company survey, was originally surveyed May 9, 1874, and patented June 23, 1876, to the Fidelity Insurance, Trust & Safe Deposit Company of Philadelphia. Section 34 in the same block was originally surveyed June 16, 1874.. This section was school land. A resurvey of the S. E. ¼ of section 34 was made for J. F. Evans on December 31, 1878, by virtue of his application dated February 11, 1878, and in accordance with an act of the Legislature approved April 24, 1874; and on February 11, 1897, the S. E. ¼ of section 34 was awarded to him. The original survey of 34 and the resurvey of the S. E. ¼ thereof conflicted with the western portion of section 35, the overlapping portion of the S. E. ¼ of 34 being the land in controversy herein.

On August 25, 1903, Evans conveyed to W. L. Howry, describing the land as:

"The S. E. quarter of section No. 34, block No. 5, certificate No. 2/830 T. & P. Ry. Co. public free school land originally sold by the state of Texas to said J. F. Evans on the 11th day of February, 1897, the same containing 160 acres of land, more or less."

On November 3, 1906, Howry conveyed to S. W. Lauderdale describing the land as follows:

"Shown and designated on the official map of said county as the southeast quarter of section number thirty-four in block No. five certificate No. 2/830, T. & P. Ry. Co. school land, containing 160 acres, more or less, and sold by the state of Texas to J. F. Evans on the 11th day of February, 1897, and not yet patented."

On August 21, 1911, S. W. Lauderdale and wife granted and conveyed to the Texas Company all of the oil, gas, coal, and other minerals in and under land described as "abstract No. 2387, S. E. ¼, section 34, J. T. Evans 160 acres," reserving, as to the oil, a one-eighth royalty of all produced and saved from the premises.

S. W. Lauderdale died about 1912 intestate, leaving his wife, Nannie E., surviving and five children as his heirs, viz.: B. H., J. A., T. D., Jennie, and Edith Lauderdale.

By deed dated October 20, 1915, B. H. Lauderdale acquired from the surviving wife and the other four children their undivided nine-tenths interest in the S. E. ¼ of section 34, the land being described in the deed as follows:

"Containing 160 acres of land more or less, known and designated as the S. E. ¼ of section 34, in block 5 T. & P. Ry. Co., cert. 2/830, awarded by the state to J. F. Evans, on February 11, 1897, under abstract No. 2387."

There is no conveyance in the record from the patentee 'of section 35, but by deed dated

September 18, 1901, F. Applegate conveyed the same to J. W. Parks.

The testimony of B. H. Lauderdale shows that Parks went into actual possession of that portion of section 35 east of the conflict and had remained in adverse possession of the same more than ten years. However, the land in dispute was inclosed by a fence running north and south on the east side. This fence formed the east line of the S. W. Lauderdale inclosure and had been there for many years. Parks never had actual possession of any part of the land in conflict, but it had been in the actual possession of Evans, Lowry, S. W. and B. H. Lauderdale, and the evidence is sufficient to show that their possession had been of such character and for the requisite time to vest title by limitation under the ten years statute.

On February 13, 1917, B. H. Lauderdale and wife conveyed to W. E. Smith:

"All that certain undivided one-half (½) interest in and unto an undivided one-eighth interest of all of the oil, gas or other minerals in, on or under the following described tract of land situated in Stephens county, Texas, to wit: 160 acres more or less, known and designated upon the map of the lands of said Stephens county as the S. E. ¼ of section No. 34, Blk. No. 5, T. & P. Ry. Co. lands, certificate No. 2/830, awarded to J. F. Evans February 11, 1897."

On March 26, 1918. B. H. Lauderdale and wife conveyed to S. D. Liles:

"An undivided one-fourth (¼) interest in and to all natural gas, oil, petroleum, coal and other mineral and mineral substances in, on and under the following described lot, tract or parcel of land, lying and being situated in Stephens county. Texas, and containing 160 acres more or less, known and designated as the S. E. ¼ of section 34, block No. 5, T. & P. Ry. Co. land, cert. No. 2/830, awarded by the state of Texas to J. F. Evans on February 11, 1897, under abstract No. 2387, and being the same land and premises conveyed to the grantor herein by deed from Nannie E. Lauderdale et al. October 20, 1915, recorded in volume 50, page 612, deed records of Stephens county, Texas."

The interest of Smith passed to the plaintiff Lee by two deeds dated March 23 and March 25, 1918, conveying, respectively:

An "undivided (½) one-half of an undivided one-half (½) interest in and to all of the natural gas, oil, petroleum, coal and all other minerals and mineral substances, in, on and under the following described lot, tract or parcel of land lying and being situated in Stephens county. Texas, and being the southeast one-fourth (¼) of section (34) thirty-four, block five (5), T. & P. Ry. Co. school land, containing one hundred sixty acres (160), and being the same land one-half mineral rights of which was sold to W. E. Smith by B. H. Lauderdale," and "an undivided one-half (½) interest in and to all the natural gas, oil, petroleum, coal and all other mineral and mineral substances in, on and under the following described lot, tract or parcel of land lying and being situated in Stephens county, Texas, and being the southeast one-fourth (¼) of section thirty-four (34) block five, T. & P. Ry. Co. school land, containing one hundred sixty (160) acres and being the same land, one-half mineral rights of which was sold to W. E. Smith by B. H. Lauderdale."

On August 10, 1918, Lee conveyed to the plaintiffs:

"Jack Black, Will Black and N. N. Rosenquest, share and share alike, an undivided three-fifths (⅗) of an undivided (¼) interest in and to all natural gas, oil, petroleum, coal and all other minerals and mineral substances in, on and under the following described lot, tract or parcel of land, lying and being situated in Stephens county, Texas, and being the southeast one-fourth (¼) of section No. 34, block No. 5, T. & P. Ry. Company school land, containing one hundred and sixty (160) acres, and being the same land, of which one-half mineral rights was sold to W. E. Smith by B. H. Lauderdale."

On April 9, 1918, S. D. Liles conveyed to B. S. Walker:

An "undivided twenty-two one hundred and sixtieths ($^{22}/_{160}$) interest in and to all of the natural gas, oil, petroleum, coal and other mineral and mineral substances, in, on and under the following described tract of land situated in Stephens county, Texas, to wit: Being 160 acres of land, more or less, the S. E. ¼ of section No. 34, certificate 2/830, T. & P. Ry. Co. school lands, originally awarded to J. F. Evans on the 11th day of February, 1897. * * * "The property and interest herein conveyed being a part of the property conveyed to me by B. H. Lauderdale and wife by deed dated 26 day of March, 1918, and recorded in volume 57, page 625, of the deed records of Stephens county, Texas, and to which reference is here made."

On April 12, 1918, B. S. Walker conveyed to the plaintiff H. C. Roberts:

"An undivided ³/₈₀ interest of all natural gas, oil, petroleum, coal and all other minerals and mineral substances in, on and under the following described lot, tract or parcel of land lying and being situated in Stephens county, Texas, and being 160 acres more or less, the S. E. ¼ of sec. No. 34, blk. No. 5, T. & P. Ry. Co. lands, cert. No. 2/830, abst. No. 2387, originally granted to J. F. Evans by the state of Texas."

On April 3, 1918, S. D. Liles conveyed to S. E. Graham:

"An undivided ¹/₃₂ interest in and to all natural gas, oil, petroleum, coal and all other mineral and mineral substances in, on and under the following described lot or parcel of land, lying and being situated in Stephens county, Texas, containing 160 acres, more or less, known and designated as the S. E. ¼ of sec. 34. block No. 5, T. & P. Ry. Co. land, cert. No. 2/830, awarded by the state of Texas to J. F. Evans on February 11, 1897, under abstract No. 2387, and being the same land and premises conveyed to B. H. Lauderdale by deed from

Nannie E. Lauderdale et al., October 20, 1915. Recorded in volume 50, page 612, deed records of Stephens county, Texas, and being part of the same mineral interest conveyed to S. D. Liles by B. H. Lauderdale and wife, Fannie F. Lauderdale, March 26, 1918. Recorded in volume 57, page 625, deed records of Stephens county, Texas."

On May 8, 1918, S. E. Graham conveyed to the plaintiff S. & G. Company:

An "undivided one thirty-second ($1/_{32}$) interest in and to all of the natural gas, oil, petroleum, coal and all other minerals and mineral substances together with a like interest in the revenue derived from any or all of the same whether in kind or in money in, on and under the following described lot, tract or parcel of land lying and being situated in the county of Stephens and the state of Texas, and being known and designated as follows: Being the S. E. ¼ of section 34, block 5, T. & P. Ry. Co. lands, and being abstract No. 2387, 160 acres more or less, and being the entire interest in the said tract conveyed to me by S. D. Liles by transfer dated the 3d day of April, 1918, and recorded in the deed records of Stephens county, Texas, in volume 58, page 156, which transfer is referred to and made a part hereof for better description of the said 160 acres and the stipulation and conditions of the said transfer."

On May 5, 1918, S. D. Liles conveyed to the plaintiff Fred W. Frost:

"An undivided three one hundred sixtieths interest ($3/_{160}$) in and to all natural gas, oil, petroleum, coal and all other minerals and mineral substances in, on and under the following described lot, tract or parcel of land, lying and being situated in Stephens county, Texas, and being the southeast one-fourth (¼) of section No. thirty-four (34), block No. 5, T. & P. Ry. Co. lands, in Stephens county, Texas, certificate No. 2/830, J. F. Evans, original grantee, and being the same premises as conveyed by Nannie E. Lauderdale et al. to B. H. Lauderdale on October 20, 1915, as the same appears of record in volume 50, page 612, of the deed records of Stephens county, Texas."

On August 28, 1918, S. D. Liles conveyed to plaintiff G. T. Liles:

"An undivided $2/_{160}$ interest in and to all of the natural gas, oil, petroleum, coal and other minerals and mineral substances in, on and under the following described lot, tract or parcel of land lying and being situated in Stephens county, Texas, and being the S. E. ¼ of section 34, block 5, Texas & Pacific Railway Company lands, certificate 2/830, awarded by the state of Texas to J. F. Evans on the 11th day of February, A. D. 1897, it being the intention of this deed to convey unto the said G. T. Liles an undivided one-twentieth interest in and to all of the mineral rights interest and property acquired by me by virtue of a deed executed to me by B. H. Lauderdale and wife of March 26, 1918, and which deed is of record in Stephens county, Texas, in volume 57, page 625, of the deed records of Stephens county, Texas."

On June 26, 1919, S. D. Liles conveyed to plaintiff C. M. Caldwell:

"An undivided proportionate interest (as hereinafter set out) in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land situated in Stephens county, Texas, to wit:

"First Tract. Being 160 acres of land, more or less, known and designated as the S. E. ¼ of sec. 34, block No. 5, T. & P. Ry. Co. land, cert. No. 2/830, awarded by the state of Texas to J. F. Evans on February 11, 1897, under abstract No. 2387, and being the same land and premises conveyed to the grantor herein by deed dated March 26, 1918, from B. H. Lauderdale and wife, Fannie F. Lauderdale, said deed being recorded in the deed records of Stephens county, Texas, in volume 57, page 625."

This deed further states:

"It is understood by the grantor and grantee herein, that the undivided mineral interest intended to be hereby conveyed to grantee, in and to each tract of land above described is as follows: To first tract—an undivided $1/_{20}$ interest.

"It is also understood, and it is the intention of this instrument, that the interest herein conveyed to grantee in the above described tracts of land is all the interest owned in same by grantor except the eighth tract."

No conveyance to plaintiff S. T. Swenson is shown.

By deed dated July 6, 1918, B. H. Lauderdale and wife conveyed to the defendant J. R. Stubblefield:

"An undivided one-tenth of all that certain lot, tract or parcel of land situated in Stephens county, Texas, and being a part of survey No. 35, block 5, as surveyed by the T. & P. Ry. Co. and described by metes and bounds as follows, to wit" (Here follow field notes of the land in dispute).

This conveyance was upon condition that it should become null and void if J. W. Parks recovered any of the land or if S. D. Liles or W. E. Smith or their assignees recovered any mineral interest in the lands by virtue of the deeds of March 26, 1918, and February 13, 1917, respectively, or in the event of the death of J. R. Stubblefield before contemplated litigation is settled.

On September 28, 1918, Mrs. N. E., Jennie D., Edith M., T. D., and J. A. Lauderdale conveyed to B. H. Lauderdale "a part of sec. No. 35, block No. 5, as surveyed by the T. & P. Ry. Co. and described by metes and bounds as follows." (Here follow field notes to the land in dispute.)

On October 18, 1918, J. W. Parks conveyed to the Texas Company by quitclaim deed the land in controversy, describing same by metes and bounds, and referring to same as a part of section 35.

On October 19, 1918, B. H. Lauderdale and wife and Stubblefield executed to the Texas Company a mineral lease upon the land in controversy, describing it by metes and

bounds and reserving a one-eighth royalty in the oil production.

On August 20, 1919, the Texas Company conveyed to B. H. Lauderdale by quitclaim deed the land in controversy, describing same by metes and bounds and reserving all rights and privileges owned or held by it under all oil and mineral leases.

On August 26, 1919, B. H. Lauderdale and wife conveyed to the defendant Nannie E. Lauderdale:

An "undivided one-half (½) interest in and to all of my interest in the oil production that may be produced, and is being produced from B. H. Lauderdale well No. 1, situated on the southern part of the following described tract of land, to wit:

"Being a part of section 35, blk, 5, T. & P. R. R. Co. survey in Stephens county, Texas, described by metes and bounds as follows: (Here follow field notes of land in controversy.)"

On November 1, 1919, Mrs. N. E. Lauderdale conveyed to Edith M. James and Jennie D. Lauderdale each an undivided one-third interest in her interest in the oil production acquired by her under the last-mentioned deed.

On July 26, 1918, the S. E. ¼ of section 34 was patented to W. L. Howry, assignee of J. L. Evans, his heirs and assigns, as a tract of 120.6 acres based upon a resurvey made July 1, 1918, for B. H. Lauderdale, by B. T. Quarles, county surveyor. This survey and patent did not embrace the land in controversy.

A previous survey made by said Quarles for Lauderdale on May 23, 1918, shows that the S. E. ⅛ of section 34 contained 162.4 acres and the field notes embraced the land in dispute.

The assignments and propositions are so numerous that they will not be considered in detail. Our conclusions will be confined to the 'controlling questions.

It is asserted that the court erred in admitting in evidence the conveyances from B. H. Lauderdale and wife to W. E. Smith and S. D. Liles because the land sued for is a portion of section 35 and the deeds in unambiguous language conveyed land in section 34; also, that it was error to admit parol evidence tending to show that by said conveyances Lauderdale and wife intended to convey the land in the Lauderdale inclosure.

[1] The original field notes of the survey of 34 made June 16, 1874, and the resurvey of the S. E. ¼ of that section made for Evans on December 31, 1874, and upon which the land was awarded to him in 1897, embraced the land in controversy. In order to locate the land described in the deeds to Smith and Liles, it was necessary to resort to those field notes, and the effect of those deeds was to convey the land embraced in such field notes. It is true the survey conflicted with 35, but that does not alter the

fact that the land was actually embraced in the S. E. ¼ of section 34 as originally surveyed and located. There is no uncertainty or ambiguity in the description contained in the deeds, but by virtue of the conflict between the surveys an uncertainty is possibly suggested as to what was intended to be conveyed. If so, extraneous parol evidence was admissible to show the true intention of the parties to the deeds. Bell v. Wright, 94 Tex. 407, 60 S. W. 873; Koenigheim v. Miles, 67 Tex. 113, 2 S. W. 81; Petty v. Wilkins (Tex. Civ. App.) 190 S. W. 531; Creech v. Davidson, 5 Tex. Civ. App. 41, 23 S. W. 995.

The evidence amply supports the findings that Lauderdale and wife intended to convey the land in controversy. Nor is there any merit in those assignments complaining of the admission of the deeds to the various parties claiming under Smith and Liles. These deeds upon their face show that they convey an interest in the land coveyed by Lauderdale to Smith and Liles, and the parties have so regarded and treated them. Nor was there any error in admitting the deeds from Evans to Howry, Howry to S. W. Lauderdale, and Nannie E. Lauderdale et al. to B. H. Lauderdale, dated October 20, 1915; nor the deed from Lauderdale to Stubblefield.

[2] The third proposition under the thirty-ninth assignment is:

"The plaintiffs' cause of action, if any, to reform the deeds under which they claim, on account of either fraud or mutual mistake, was barred by the four years' statute of limitation, and therefore the plaintiffs are not entitled to recovery."

This presents no error. No relief by way of reformation was granted, nor was any necessary to the plaintiffs' right of recovery.

[3] Under the fifty-fifth assignment this proposition is submitted:

"If the plaintiffs are entitled to recover for the conversion of any oil taken from their land, such recovery would be against the Texas Company, who appropriated the same, and not against the remaining defendants."

The Texas Company was liable to the plaintiffs as upon conversion, but the failure of the court to hold that company liable to the plaintiffs is not a matter of which the appellants can complain. Appellants were paid the proceeds of the oil thus converted by the Texas Company and became liable therefor to the appellees as for money had and received. The error of the court in this matter affects only the appellees.

It is further claimed that appellees' cause of action, if any, for the moneys received by appellants from the oil produced upon the land, is barred by the two years' statute of limitation. In view of this question of limitation, the pleadings have been stated fully. The judgment against the Texas Company for $5,188.45 upon its face shows that it was

for oil produced and marketed between April 14, 1920, and May 15, 1922. This is shown by this recital in the judgment:

"It further appearing to the court that the defendant, the Texas Company, now holds and has in its possession the sum of $5,188.45, representing the value of oil which has been produced, saved, and marketed by it from the above-described lands during the period beginning April 14, 1920, and ending May 15, 1923, to which sum the above-named plaintiffs are entitled."

The supplemental petition filed December 13, 1922, seeks recovery against the other defendants as for money had and received, and as we construe the pleadings it was the first that was filed that would have authorized a judgment upon any theory against the Lauderdales, Stubblefield, and the Jameses for money paid to them which rightfully belonged to the plaintiffs as owners of an interest in the oil production. This is certainly true as to Mrs. N. E. and Jennie D. Lauderdale and the Jameses, because there was no pleading whatever to support such a judgment against them until the filing of the supplement. The money judgment against these parties was founded upon this supplemental petition as is manifest by its recitals. Preceding the judgment against each of them is a recital of which the following is typical:

"It further appearing to the court that the defendant B. H. Lauderdale has heretofore been paid the sum of $11,938.53, which belonged and should have been paid to the plaintiffs herein."

Appellees assert that the evidence does not show when the money was paid to and received by them, hence the plea of limitation fails because it does not appear that more than two years has elapsed between the date they received the money and the filing of the supplement.

[4] But in this view we do not concur. Upon the record as a whole, we think the conclusion is inevitable that the money was paid to and received by appellants more than two years prior to the filing of the supplemental petition on December 13, 1922. The assignment presenting the question of limitation is therefore sustained except as to appellant Stubblefield, who filed no limitation plea in bar of the recovery sought in the supplemental petition. Under the thirty-ninth and fifty-first assignments, appellants complain of the judgment in favor of Swenson because there is no deed to him. This is sustained, there being no evidence of any right or title of any kind vested in Swenson.

The judgment will be reformed as follows: Eliminating the recovery by Swenson and the recovery of the money judgment by appellees against B. H. Lauderdale, Jennie D. Lauderdale, Mrs. N. E. Lauderdale, Edith M. and T. M. James. In no other respects will the judgment be disturbed.

Reformed and affirmed.

### On Rehearing.

PER CURIAM. Rehearing denied.

HARPER, C. J. (dissenting). This suit is to establish title to three-fourths of one-eighth royalty interest in appellees as against appellants to the oil and gas in and underneath, and oil extracted prior to suit, of the strip of land indicated by the dotted line through "35" on the following plat:

Being sections 34 and 35 in block 5, Texas & Pacific Railway Company, situated in Stephens county, Tex. Thirty-five was originally surveyed May 9, 1874, and patented June 23, 1876, to the Fidelity Insurance, Trust & Safety Deposit Company of Philadelphia. Thirty-four was originally surveyed June 16, 1874, school land. Resurveyed upon application to purchase by J. F. Evans, February 11, 1878, and on February 11, 1897, the S. E. ¼ was awarded to him. By the original survey the two sections conflicted as indicated above, and 35 being the first patented, the S. E. ¼ of section 34 by field notes was patented to its west line, and for that reason contains 120 acres instead of 160 as originally surveyed.

By their first amended original petition plaintiffs name B. H. Lauderdale as common source of title, and set up:

"That if the deeds, or any of them, within the chain of title of plaintiffs, or any of them, do not contain the land here sued for that it was the intention of all parties that the land herein sued for be included in said deed or deeds, and that such omission was due to the fraud of the defendants or by accident or mistake of all the parties, and such deed or deeds should be corrected and reformed in order to show that they do in fact contain the land herein involved."

The record conclusively shows that no deed in the chain of title from B. H. Lauderdale down to plaintiffs describes the land in controversy, so in the absence of fraud or mistake parol evidence is not admissible to enlarge the boundaries. Crabb et ux. v. T. & P. Coal & Oil Co. (Tex. Civ. App.) 238 S. W. 279.

The pleadings charge fraud or mistake up-

on the part of defendants. W. E. Smith and S. D. Liles are not parties defendant to this suit, and these are necessary links in the plaintiff's chain of title to enable them to recover, and they cannot be supplied without making them parties.

For these reasons I am of the opinion that the cause should be reversed and remanded for new trial, and therefore enter my dissent.