S. B. BURNETT v. E. M. POWELL.

No. 235.

**1. Practice on Appeal—Filing Conclusions of Fact and Law.—** The law does not contemplate that the Courts of Civil Appeals shall reduce their opinions to writing in affirmed cases in which no writ of error lies to the Supreme Court; and they must decide, in the first instance, whether a given case is one wherein their jurisdiction is final. If the Supreme Court, by granting a writ of error, decides to the contrary, and assumes jurisdiction of the case, conclusions of fact and law can then be filed in the Court of Civil Appeals.

**2. Same—Boundary Cases.—** Where the right of parties to an action involving the title to land depends solely on location, which must be determined by the boundaries of different tracts, the action is one which the law designates as a "case of boundary," and it is immaterial whether the evidence relied upon to establish the location of the respective surveys be natural or artificial objects, course, distance, additions by accretion, or avulsion.

APPEAL from Wichita. Tried below before Hon. J. A. TEMPLETON.

In this case the judgment of the District Court was affirmed on oral opinion, October 25, 1893. Appellant thereupon applied to the Supreme Court for a writ of error, and on January 11, 1894, obtained an order of that court allowing him thirty days within which to amend his application by obtaining and attaching thereto conclusions of fact and law by the Court of Civil Appeals. Burnett v. Powell, 24 S. W. Rep., 788. Appellant then filed in the Court of Civil Appeals a motion for written conclusions of fact and law; and the opinion here published was rendred on the hearing of that motion, which was denied. Subsequently appellant amended his application for writ of error by attaching thereto copy of this opinion, with prayer for mandamus to compel the filing of written conclusions of fact and law, which application was denied and dismissed by the Supreme Court, February 1, 1894. Burnett v. Powell, 86 Texas, 382.

*W. W. Flood* and *W. G. Eustis*, for appellant.

*Leake, Shepard & Miller* and *A. H. Carrigan*, for appellee.

HEAD, ASSOCIATE JUSTICE.—Believing that the legal literature of this State is already sufficiently voluminous, especially in prescribing rules for the correct solution of questions of boundary, this court, from its organization, has felt that it could subserve the interests of litigants better by devoting its time to the decision of cases than by writing at length the reasons for such decisions, unless some useful purpose could be accomplished thereby; and we have, therefore, adopted the practice of delivering our opinions orally in affirmed cases in which our jurisdiction is believed to be final, contenting ourselves with filing a brief statement of

the grounds of the decision, to serve as a guide to the losing party in making his motion for a rehearing, instead of a formal written opinion. This practice we shall continue to follow until convinced of our error in its adoption.

In this case appellee claims the land in controversy under a patent issued May 21, 1888, while appellant claims under patents of much older date. There was no issue made in the court below as to the titles of the respective parties under these patents, the only issues being as to whether or not the land is embraced within appellant's surveys, and if not, the amount of damages for which he was liable for use and occupation. It is true appellant assigned as error the refusal of the court below to allow him to introduce in evidence the field notes of the State's part of the land located by virtue of appellee's certificate, it being Confederate script number 2026, for the purpose of showing that it was not contiguous to the land in controversy, and hence the supposed invalidity of appellee's patent; but there is nothing in the record to sustain the assignment that such evidence was offered or rejected, except a recital in the motion for new trial to that effect, and it would be idle to consume time to show, that in the absence of a bill of exceptions approved by the court, this was wholly insufficient.

Besides, in Von Rosenberg v. Cuellar, 80 Texas, 256, the present Chief Justice of our Supreme Court, in treating of this very question, after showing that the law required locations by virtue of these certificates to be made contiguous as in other cases, and that the question could be raised previous to the issuance of patent, uses this language: "If he (appellee) were suing on patents issued on illegal surveys, no one not claiming under some right existing prior to the issuance thereof could question their validity;" and we are of opinion that this principle has been so often recognized in this State that it should be no longer considered an open question.

It seems to us, then, that the case as presented in the lower court comes plainly within the statute which gives this court final jurisdiction in "all cases of boundary," whether the evidence relied upon to establish the location of the respective surveys be natural or artificial objects, course, distance, additions by accretion, or avulsion. It either case the question is, To which survey does the land belong? and this we understand to be the view entertained by our present Supreme Court.

In Schley v. Blum, 85 Texas, 553, the present Chief Justice of that court, in construing the statute in question, says: "There is, however, another reason why this court has no jurisdiction of this cause. While the action against the surveyor is to compel him to perform an official act, that against the adverse claimant of the land is to test the right of the respective parties claiming it; the one by virtue of locations, valid if the land was vacant, and the other through patents claimed to embrace

it. The claimant of the land was made a defendant in order that the court might adjudicate the right to the land, as a necessary fact to be determined before the surveyor could be compelled to make the survey.

" The action was one involving the title to the land as fully as though that had been the sole purpose for which it was brought; and a judgment rendered in it, as between the adverse claimants, would be as conclusive as would be a judgment rendered in an ordinary action of trespass to try title. The right depended on a question of boundary; if the western boundary of the East Texas Railway block was the eastern boundary of the Morris & Cummins block, plaintiffs had no right, for there was no vacant land subject to location under their certificates; while if the blocks were not contiguous, they were entitled to land between the blocks covered by their locations.

" Where the right of parties to an action involving the title to land depends solely on location, which must be determined by the boundaries of different tracts of land, then we have what the law designates as a ' case of boundary.' The law provides, that ' The judgments of the Courts of Civil Appeals shall be conclusive in all cases upon the facts of the case; and a judgment of such court shall be conclusive on facts and law in the following cases; nor shall a writ or error be allowed thereto from the Supreme Court, to-wit: * * * 2. All cases of boundary.' This court has no jurisdiction to grant the writ prayed for, nor to review, through any process, the decision of the Court of Civil Appeals in this cause, and the application must be dismissed."

In this case the question as to whether the land sued for was in appellee's or appellant's survey was decided in favor of appellee, either upon the ground that the surveyor in making appellant's location mistook a slough for the river, and the call for Red River in his patent was therefore a mistake (Allen v. Koepsel, 77 Texas, 505; Koepsel v. Allen, 68 Texas, 446); or upon the ground that the land in controversy was left adjacent to appellant's surveys by a sudden change in the river, so as not to make it a part thereof as an addition thereto by accretion or reliction, the evidence being sufficient to sustain the verdict upon either ground, and the charge of the court clear and unexceptionable.

We therefore conclude, that viewed in any light, this is a case of boundary, from which no writ or error lies from this to the Supreme Court; and acting upon this view of the law, we affirmed the judgment of the court below in an oral opinion delivered October 25, 1893, making a brief memorandum in writing of the points decided, instead of formal conclusions, as is our custom, and we are now asked in this motion to reduce our opinion to writing, to serve as a basis for an application for a writ of error. If this request affected only this particular case, we should comply therewith without hesitation; but viewing the question as we do, we believe it in-

volves not only this but every other case in which the law has attempted to confer final jurisdiction upon this court.

The law certainly does not contemplate that we shall reduce to writing our opinions in affirmed cases, in which no writ of error lies from our decision.    We must, of course, decide in the first instance as to whether the particular case is of that class.    If we decide against the right to the writ, the losing party can present his application to the Supreme Court " with a brief [and fair] statement of the nature of his case and the ground upon which the writ of error is prayed," as required by article 1011b, and if that court, after " inspecting the petition and record," as it is required to do by article 1011c, shall decide to assume jurisdiction, the conclusions can then be filed with but little cost or trouble to the parties; but if we are required to file written opinions in all cases, regardless of our views as to the finality of our judgments, simply to render it, perhaps, a little more convenient for the Supreme Court to pass upon the jurisdictional question, the business of this court must of necessity be greatly retarded, and the speedy disposition of their cases so long desired by litigants denied.

We understand that the statute requires our conclusions to be filed, in cases in which a writ of error lies, within thirty days after the decision is rendered, and in cases which we think come within its provisions it has been, and will continue to be, strictly obeyed; but no one will contend that this statute as to time is anything more than directory, and in cases which we think do not come within its terms we shall pursue the practice heretofore adopted of leaving the filing of the conclusions until our judgment upon the question of jurisdiction has been overruled.    We believe our Supreme Court, when it considers the condition of our respective dockets, will sustain us in this course, and will not hesitate to adopt some other method of determining as to whether or not the case presented is one in which a writ of error lies, besides requiring the Courts of Civil Appeals to take the necessary time from their duties to write lengthy conclusions in all cases, through fear that they may be possibly mistaken as to the limit of their jurisdiction in one of them, when the mistake can be so easily remedied after it is discovered.

The motion will therefore be overruled.

*Motion overruled.*

Delivered January 24, 1894.