## JOSIE E. BELL v. C. J. WRIGHT.

· No. 983. Decided February 25, 1901.

**1. Deed—Boundary—Street Line—Intention.**

A deed of city lots "fronting 50 feet on T. Street and running back on R. Avenue for depth 100 feet" was in description equally consistent with an intention to bound the property sold upon the lines of the streets as fenced, held, and recognized for many years, or upon the street lines as originally laid out, but which differed from the lines fenced and recognized. The limits of the land conveyed depended upon what the parties understood to be the street boundary at the time they called for it in the deed. (Pp. 409-412.)

**2. Same.**

The rule for determining the limits of the street would be the same whether or not the deed passed the grantor's title to the middle of the streets. (P. 412.)

**3. Improvements—Good Faith.**

A purchaser who occupies and improves, over the protest of the grantor, land of the latter not embraced in the deed, is not entitled, on being dispossessed, to recover the value of such improvements as made in good faith. (Pp. 412, 413.)

**4. Same.**

Where grantor and grantee intended by the conveyance to street lines to bound the lots conveyed upon such lines as fenced and recognized, and not on the lines as originally laid out, the grantee who afterwards, and over the objection of his grantor, took possession and improved to limits not included in the lots as laid off from such street fences, but included in the boundaries if run from the originally laid out street line, could not claim to have made such improvements in good faith when the grantor recovered the strip so wrongfully occupied and improved. (Pp. 412, 413.)

QUESTIONS CERTIFIED from the Court of Civil Appeals for the First District, in an appeal from Harris County.

*Hutcheson, Campbell & Hutcheson, Edgar Watkins,* and *Frank C. Jones,* for appellant.—Where a deed calls for street lines in a city, without specific reference to any map or plat, the street as actually laid out, used, and worked is meant, and not the technically correct lot lines, even if such lines are capable of ascertainment. George v. Thomas, 16 Texas, 74; McArthur v. Henry, 35 Texas, 802; Browning v. Atkinson, 46 Texas, 605; Cooper v. Austin, 58 Texas, 494; Evans v. Foster, 79 Texas, 48; 2 Dev. on Deeds, sec. 1020a, p. 1427, sec. 1028a, p. 1440; Washb. on Real Prop., 3 ed., 360; 4 Am. and Eng. Enc. of Law, 2 ed., 815, 816; Angell & Durfee on Highways, sec. 149; Water Power Co. v. Tibbetts, 31 Conn., 165; Cleveland v. Obenchain, 107 Ind., 591; Brown v. Heard, 85 Me., 294; Stearns v. Rice, 31 Mass., 411; Barrows v. Webster, 144 N. Y., 422; City of Racine v. Emerson, 85 Wis., 80; 8 Am. Dig., Cent. ed., sec. 124; O'Brien v. King, 49 N. J. L., 79; Blackman v. Riley, 138 N. Y., 318; Ralston v. Miller, 3 Rand. (Va.), 44; Diehl v. Zanger, 39 Mich., 601; Bell v. Wright, 1 Texas Court Reporter, p. 140.

In answering this question the court should endeavor to arrive at the intention of the parties, and the facts show that the real intention of the parties was to consider the fence lines as the true lines. Smith

v. Brown, 66 Texas, 543; George v. Thomas, 16 Texas, 90; Cullers v. Platt, 81 Texas, 258.

When a defendant has erected improvements on property, the title to which he knows is questioned, he is not entitled after losing the land to receive pay for his improvements. The facts do not bring this case within our statute. Rev. Stats., art. 5277; Dorn v. Dunham, 24 Texas, 380; Parrish v. Jackson, 69 Texas, 615; House v. Stone, 64 Texas, 677; Farris v. Gilbert, 50 Texas, 350; Brown v. Bedinger, 72 Texas, 248; Woodhull v. Rosenthal, 61 N. Y., 382. Not allowed for mistake as to boundary: Nesbitt v. Walters, 38 Texas, 576; Gatlin v. Organ, 57 Texas, 11.

At common law nothing could be allowed for improvements except to recoup as to rents. Appellant claims no rents, so even if our statute is not exclusive of the common law, appellee is not entitled to an allowance for improvements. Green v. Biddle, 8 Wheat., 1; Scott v. Mather, 14 Texas, 235-240; Coulters' Case, 5 Coke, 30; Wood v. Wood, 83 N. Y., 575; Putnam v. Tyler, 117 Pa. St., 570.

*Ingham S. Roberts* and *Jas. R. Masterson*, for appellee.—To the first question certified to this court appellee submits that when lots are sold by numbers calling for streets, that the center of the streets, and not the margin or edges, is intended, and that under the deed from Mrs. Bell to Wright he acquired title to the north halves of lots 9 and 10 according to the location of such lots by the original founders of the city, and not by a fence about two feet (1.7 feet) out in the street, not on a line with the other fences.

The Court of Civil Appeals finds that the court below found, and that the evidence was sufficient to sustain the findings, "that the true lot lines, as the city was originally laid out, gave the streets at that point their original width of eighty feet, and that Wright had located his building according to the original lot lines." Appellee submits that such being the fact, there can be no question that the finding of the District Court in favor of the appellee is correct, and the judgment rendered in his favor should be affirmed.

In this connection appellee submits that the Court of Civil Appeals labors under an erroneous conception of what is sued for by Mrs. Bell. The court says in its findings of fact that "the suit is for two strips of land taken by Wright as a result of his giving the streets their technical width." This is an error apparent of record. The suit is for the parts of lots 9 and 10, block 91, south of the north halves of said lots—claiming the land as being on the south halves of said lots, Wright asserting title to the north halves of said lots according to the location thereof by the founders of the city, by the original maps, and by the location thereof by all the surveyors and the city engineer, Mrs. Bell endeavoring to compel Wright to take as a part of his north halves of said lots 9 and 10, block 91, parts of Rusk Street and Travis Street, and this, notwithstanding the calls of her warranty deed to Wright, calling for both streets. Wright contends the calls

for the streets of its own force carried to the center of such streets, subject of course to the right of the public over the streets, and that there being nothing on the face of his deed calling for the edges or margins of the streets, the calls for the streets mean to the center of such streets.

"Bounded 'by,' 'on,' or 'along' a highway. Where a deed described land as 'bounded by,' or bounded 'on,' or 'running on' a highway or the like without any restricting or controlling words, it must be construed as conveying the grantor's title in the land to the center of the highway, even though it would be excluded by the dimensions of the lot." 4 Am. and Eng. Enc. of Law, 2 ed., 813.

In Wood v. Quincy, 11 Cushing (Massachusetts), 487, it was held that a fence fronting on a highway for more than twenty years is not to be taken as the true line if the original boundary can be definitely determined by ancient monuments, even though such monuments may not be in existence at the time.

The intent to convey to the middle of the line of the highway arises from the presumption that adjoining owners originally furnished the land for the right of way in equal proportions; and from the further presumption that such owner, in selling land bounded upon the highway, intended to sell to the center line of the street, and not retain a narrow strip which could hardly be of any use or value except to the owner of the adjoining land. 1 Jones on Real Prop., p. 336, par. 448, ed. of 1898; 2 Dev. on Deeds, ed. of 1887, p. 335, near bottom page, secs. 1020, 1024, 1025, 1044.

Appellee submits that, as the District Court located his.lots, and the Court of Appeals found as a conclusion of fact that the evidence supports such finding of location, there is nothing for this court to pass upon. The north half of lot 9 and the north half of lot 10, block 91, is located just where Wright placed his brick building, and exactly where all the surveyors and city engineer found the location thereof; and the District Court having so found, and the Court of Appeals having found that the evidence sustains such findings, what remains for this court to do?

If Mrs. Bell can not get fifty feet off the south ends of lots 9 and 10, it is because her neighbors on the south of her have encroached on her.

WILLIAMS, ASSOCIATE JUSTICE.—The Court of Civil Appeals for the First District has certified the following statement and questions:

"The questions hereinafter set out and which we respectfully certify for your decision arise upon the following state of facts in this cause now pending before this court on motion for rehearing.

"Mrs. Josie Bell was the owner of lots 8, 9, and 10 on the south side of Buffalo Bayou in the city of Houston. On the 10th day of August, 1899, she sold to C. J. Wright, the appellee, the north half of lots 9 and 10, the deed of conveyance containing the following description:

" 'The north one-half of lot No. 9 and the north one-half of lot No. 10 fronting 50 feet on Travis Street and running back on Rusk Avenue for depth 100 feet. Being 5000 square feet.' The land affected by this conveyance was situated in the southwest corner of the intersection of Travis Street and Rusk Avenue in the city of Houston, a part of the city which had been settled for a great many years. Prior to and at the date of the sale by Mrs. Bell to Wright the lots were fenced, and next to Rusk Avenue and Travis Street the fences were upon lines which had been established and acquiesced in for forty or fifty years, and the fences had been maintained on said lines for more than thirty years. The lots were generally known and designated as the 'old Noble place.' This property and adjacent lots in the same block had been several times bought and sold with reference to the street lines as indicated by the fences, and two prior surveys made several years apart had established the lines as indicated by the fences. The fences next the street around the remainder of the block in question and the blocks immediately adjacent were on a line with above mentioned fences and had been so established for years, brick houses having been constructed out to the street lines thus marked by the fences. This was not true as to the entire length of the streets in question, the streets having been maintained their entire width in other parts of the city. Along this block and the blocks adjacent to it, the streets had never been opened and maintained their entire width of eighty feet, but for many years had been worked and maintained only to the lines as indicated by the fences. The trial court found (and the evidence sustains the finding) that the fences as located at the date of the sale had been so located for more than thirty years, and that the adverse use and possession out to the fences had been of such a nature and for such a length of time as to perfect title in Mrs. Bell to the land included within the fences, and this notwithstanding the fact that a part of the land therein included was acquired by encroaching upon the street. The trial court also found and the evidence is sufficient to sustain the finding, that the true lot lines as the city was originally laid out gave the streets at that point their original width of eighty feet, and that Wright had located his building according to the original lot lines. To the same extent that the fences encroached upon the street, the adjoining lot owners had encroached upon the opposite sides of the lots in question and the location of Wright's building upon the technical lot lines diminishes the proper width of the parts of the lots not sold so as to render them narrower than the usual building lots. By reason of the long lapse of time and the acquiescence of Mrs. Bell and prior owners, she could not maintain a suit to widen her lots in the opposite direction to the lines on that side according to the original survey.

"When the sale was made by Mrs. Bell to Wright, she reserved in writing the privilege of removing her fences, but if the original lot lines control, then the fences reserved were not on the land sold but were in the street.

"Just after the sale, Mrs. Bell applied to the city council of the city of Houston to have the fences established as the lot and street boundaries and the council officially recognized them as such, but Wright had the city engineer to make a technical survey and proceeded to build a brick business house on the lines indicated by the city engineer. Before he began to build, Mrs. Bell protested against his abandonment of the lines as indicated by the fences which had been located for so many years, and offered to indemnify him by bond if he would wait until the matter could be judicially determined. He refused and proceeded to build upon the technical lot lines as given him by the city engineer.

"These lines the court below found to be correct according to the original survey and rendered judgment in favor of Wright. He pleaded valuable improvements in good faith and prays, in case he should be cast in this suit, that he may be allowed the value of his improvements.

"Neither Mrs. Bell nor Wright knew of the location of the technical lot lines at the time of the sale, and Wright inspected the fenced lots before his purchase and thereafter measured off exactly 5000 square feet, measuring from the lines of the intersecting streets as they were originally laid out rather than from the fences as located on the ground. The suit is for the two strips of land taken by Wright as a result of his giving the streets their technical width. The price paid, the dimensions of the full lots, and the nature of the property indicate that the parties intended to buy and sell the exact footage apparently conveyed by the deed, and Wright by his subsequent acts appears to have so construed his deed.

"The questions propounded are:

"First. In construing the deed, should the part of the description referring to the lots by numbers and location be permitted to control, the exact location of the technical lot lines as originally laid out being capable of ascertainment? Or should the call for the streets be construed as a call for the margin of the streets as actually maintained?

"Second. If not, can the plea of improvements in good faith be lawfully predicated on the facts as stated, in view of the fact that the improvements were erected after Mrs. Bell had notified Wright that she was claiming a part of the land on which he proposed to place them?"

1. We do not regard the description in the deed as presenting conflicting calls; nor does there appear upon its face any uncertainty whatever. The doubt as to the location of the property conveyed by it arises in the attempt to apply the descriptive particulars to the ground. When it is sought to locate the land conveyed, it is found that the lines of the lots and streets as indicated by fences, etc., upon the ground differ from those imaginary ones fixed when the lots and streets were first laid out. The deed simply names the numbers of the lots and the streets without mentioning either the fences and other objects on the ground or the original survey to determine their loca-

tion, and the question at once arises,—did the parties refer to the lots and streets as indicated by the former or the latter? The ambiguity thus disclosed is of that kind "which extraneous evidence develops and which extraneous evidence must therefore solve." Linney v. Wood, 66 Texas, 27.

All of the description may be applied to either set of lines, as regard for the intention of the parties in the transaction may require. The question is, what land did the parties mean to identify by the description given, it being such as would include the land intended when the intent is ascertained. The numbers given to the lots in the deed should therefore be held to include the land embraced in the lots as known to the parties by those numbers, if their contract was made with reference to them, there being nothing in the language of the instrument to forbid this application of it. Barrows v. Webster, 144 N. Y., 422. The question as to what was the intention of the parties is one of fact for the Court of Civil Appeals to determine, upon which its conclusion is not definitely stated, although the certificate recites evidence from which it might be inferred that the purpose was to buy and sell the ground as indicated by the fences. We deem it a sufficient answer to the first question to say that the description given in the deed is legally consistent with the true intent of the parties as it may be found to have existed.

It is suggested by counsel for appellee that the deed would pass the title to the middle of the streets if the grantor's title extended so far. This question is not before us, unless its determination is essential to the decision of the one certified. Conceding that the proposition is correct, we can not admit that it determines the lines of the streets and lots. The interior lines of the lots must be ascertained and they must be fixed as the parties in their transaction treated them as being situated, and this can only be done by locating the lines of the streets where the parties regarded them as being.

2. We understand the second question to inquire whether or not, if the issue of title were resolved in favor of the appellant, the facts stated would admit of the conclusion that appellee made his improvements in good faith. The question of good faith vel non is largely one of fact which this court ordinarily could not determine; and the certificate states only evidence from which an inference upon the subject might be drawn. We can only treat this question as one of law by holding that the facts stated necessitate the conclusion that there could have been no good faith, and exclude any reasonable opinion to the contrary. As we have seen, the question of title depends upon the ascertainment of the real trade between the parties, and a decision of such question in favor of appellant would involve the conclusion that the land conveyed was that the lines of which were indicated by the fences. If this is true, and the appellee, having bought the land with reference to these fences, took possession of other land of appellant under the circumstances stated, we can not see anything in the facts which would authorize the conclusion that

his possession was held in good faith. Having raised such an issue with knowledge of all the facts and in disregard of the contract and the protests of the other party, his improvements would have to abide the decision of such issue. This answer is, of course, based upon the assumption that all of the facts and circumstances affecting this question are stated in the certificate.