## McDONALD et al. v. HUMBLE OIL & REFINING CO.
### No. 2684.

Court of Civil Appeals of Texas. Beaumont. Feb. 14, 1935.

Rehearing Denied Feb. 20, 1935.

Hill, Hill, Randolph & Hughes, of Houston, for appellants.

R. E. Seagler, of Houston, for appellee.

WALKER, Chief Justice.

On the 19th day of February, 1934, appellants, Joe McDonald and wife, and Dr. James House Bute and Taylor J. Hughes, filed in this cause their second amended original petition in the form of trespass to try title, naming themselves as plaintiffs, and appellee, Humble Oil & Refining Company, as defendant, claiming against appellee the title and possession of the two following tracts of land situated in Montgomery county, Tex., and described as follows:

Tract No. 1:

"Beginning at a stake for corner in the West line of the H. B. Littlefield Survey 2,006 vrs. from the South line of the William Bridges Survey;

"Thence, West 1,490 vrs. more or less, to stake for corner in the East line of the C. T. Darby Survey;

"Thence, South with the East line of said Darby Survey 890 vrs. to stake for corner;

"Thence, East along a marked line 1,490 vrs. more or less, to stake for corner in the West line of H. B. Littlefield Survey;

"Thence, North on said line to place of beginning."

Tract No. 2:

"Beginning at a stake for corner in the West line of the H. B. Littlefield Survey 2,006 vrs. South of the South line of the Wm. Bridges Survey;

"Thence, West 943 vrs. to stake for corner;

"Thence south 1,007 vrs. to stake for corner set in a marked line;

"Thence, East with said marked line 943 vrs. to stake for corner in the West line of H. B. Littlefield survey;

"Thence North with said line to place of beginning containing 168 acres of land, more or less."

The second tract was also claimed under the ten-year statute of limitation (Rev. St. 1925, art. 5510 et seq.). Against this petition appellee filed a plea in abatement, complaining of the nonjoinder of necessary parties, which was sustained by the trial court and five days allowed appellants from and after the 8th of March, 1934, in which to amend their petition and implead the parties named in the plea in abatement. Appellants declined to amend, and have prosecuted this appeal from the order of the trial court dismissing their suit.

The trial court found the following facts which have support in the plea in abatement and the evidence: On April 22, 1926, appellant Joe McDonald, on plea of ten years' limitation, recovered in federal court the title and possession of 160 acres of land, including his improvements, out of the southeast corner of Washington County Railway section No. 13 in Montgomery county; this 160 acres of land was located upon the ground by lines and corners and its location established without controversy. Subsequently, McDonald sold 30 acres out of the southwest corner of his 160 acres to W. M. Williams, and 95 acres off of the north end of his tract to John King. These two sales left Joe McDonald owning 35 acres in the southeast corner of his 160 acres, bounded on the west by the Williams tract and on the north by the King tract; and this 35 acres was owned by Joe McDonald when this suit was filed. Appellee holds oil leases on the Williams tract and the King tract under McDonald's grantees, and it has no claim whatever to, and is asserting no character of claim against, the 35 acres now owned by McDonald. There was no controversy whatever between appellants and appellee as to the ownership of McDonald's 35 acres out of the 160 acres recovered by him in federal court on the location of that 160 acres recognized by McDonald and his grantees, Willims and King.

The following statement is necessary to understand appellants' contentions: The location of the south boundary line of the Bridges survey of Montgomery county was shown beyond controversy, as was also the location of the north boundary line, the west boundary line, and the northwest corner of the H. B. Littlefield survey. The northwest corner of the Littlefield survey was about 890 varas south of the south boundary line of the Bridges survey. The north boundary line of the Littlefield survey ran east from its northwest corner, parallel with the south boundary line of the Bridges survey. The west boundary line of the Littlefield survey ran south from its northwest corner at right angles with its north boundary line, and with the south boundary line of the Bridges survey. The L. B. Weeden survey lies immediately west of the Bridges survey, with its east boundary line a common line with the west boundary line of the Bridges survey, and with its east boundary lien extending south of the southwest corner of the Bridges survey about 150 varas from the southwest corner of the Weeden survey, which is also the northeast corner of the John Davis survey. From its southeast corner, the south boundary line of the Weeden survey extends west at right angles with its east boundary line; its south boundary line being a common line with the north boundary line of the Davis survey. The Davis east boundary line is an extension south of the east boundary line of the Weeden survey. The Littlefield, the Bridges, the Weeden, and the Davis surveys are all senior to section 13, which was patented by the following field notes:

"Beginning at the N. W. Cor. of H. B. Littlefield Sur. on S line of Wm. B. Bridges Sur. a stake a holly 6 in. mkd. Ks brs. N 45 deg. W 4⁴⁄₁₀ vrs.;

"Thence, West 1,800 vrs. to E line of L. B. Weeden's Sur. a white oak mkd. B brs. S 55 deg. W 5 vrs. a Spanish oak mkd. X brs. N 6 vrs.

"Thence, South with said Weeden's Sur. 150 vrs. to cor. of J. A. Davis Sur. 2,006 vrs. to cor. stake on E line of J. A. Davis Sur.

"Thence, East 1,800 vrs. to W line of Littlefield's Sur. a stake a pine 15 in. brs. N 13 deg. W 6 vrs.

"Thence, North with Littlefield Sur. 2,006 vrs. to Beginning."

. The west boundary line of the Littlefield survey extends south in a straight line forming the west boundary line of the Pressler survey, lying immediately south of the Littlefield survey, and the west boundary line of the T. & N. O. section 15, lying immediately south of the Pressler survey. T. & N. O. section 16 lies immediately west of T. & N. O. section 15, its corner situated in and about the middle of the west boundary line of sec-

tion 15. The following are the field notes of T. & N. O. section No. 14:

"Said survey No. 14 is situated in the County of Montgomery East of West San Jacinto. Beginning at the N. E. corner of a survey No. 16 made for the Texas & New Orleans R. R. Co. on west line of a survey for same, a stake from which a pine 16 in. dia. marked T bears N 11° E 6 vrs. dist.

"Thence, North with said survey No. 15, 979 vrs. to its corner, 1,079 vrs. to a stake in South line of Littlefield survey for corner.

"Thence, West with Littlefield's South line 30 vrs. to its S. W. corner, a stake from which a post oak, 18 in. dia. marked KS 18 in. dia. bears N. 89° E 4²⁄₁₀ vrs. dist. and a red oak 26" in dia. mkd. X bears S 11° W 6 vrs. dist.

"Thence, North with Littlefield's survey, 880 vrs. to S.E. corner of Survey No. 13 a stake from which a pine 16 in. dia. bears N. 13° W 6 vrs. dist.

"Thence, West 1,800 varas, to S. W. corner of survey No. 13.

"Thence, South with J. A. Davis survey, 44 vrs. to its corner, a pine 12 in. dia. X.

"Thence, West with S. line of Davis 30 vrs. to stake on said line for corner.

"Thence, South 1,915 vrs. to a pine 12 in. dia. marked X for corner.

"Thence, East with T. & N. O. R. R. Co.'s Survey No. 16—1,860 vrs. to beginning."

The land, platted as section No. 13, has been recognized as having its northeast corner a common corner with the northwest corner of the Littlefield survey, and its north boundary line, an extension west of the north boundary line of the Littlefield survey, through the Littlefield northwest corner. This plat and map separated section No. 13 from the Bridges survey on the north and the other surveys called for in the field notes to section No. 13, and created a vacancy 890 varas wide between the Bridges survey on the north and section No. 13 on the south, which was granted by the land office to Evantha Scurry. It also created a vacancy between section No. 13 and the surveys called for by its field notes on the west, which was recognized by the land office and subsequently granted to C. T. Darby. The 160 acres, awarded McDonald by the federal court, was located for him on the ground, as stated above, out of the southeast corner of section No. 13, as that section is located upon the ground and recognized by the maps and plats of the land office. Recognizing this location as the correct location of the Williams and King tracts, appellee leased this land from Williams and King, and developed it for oil by drilling thereon producing oil wells.

Appellants brought this suit against appellee on the theory that section No. 13 must be located by its calls for the Bridges, Weeden, and Davis surveys, and not by the call for the northwest corner of the Littlefield survey. If this survey is thus located, it would extinguish that portion of the Evantha Scurry survey lying between the Bridges survey and the land office location of section No. 13 and the C. T. Darby survey lying west of section No. 13. On this theory, the 160 acres granted McDonald by the federal court, out of the southeast corner of section 13, would be moved north of his present location about 890 varas, and would cover land never in his possession, and would force appellee to take, as lessee under Williams and King, lands never in the possession of McDonald, and would deprive appellee and its lessees of the producing oil wells drilled by it on the recognized location of the McDonald 160 acres, as awarded by the federal court.

Appellants claimed the first tract described in their second amended original petition on the theory that it is vacant land, and that they have the prior right to purchase it by reason of McDonald's improvements thereon; it appears without controversy that McDonald's improvements in issue in the federal court are located on the first tract of land described in the second amended original petition. This vacancy is created by the following construction and location of the adjoining surveys: Appellants' theory moves section No. 13 north 890 varas and ties section No. 14 to its present location by its calls for T. & N. O. sections 15 and 16 on the south.

Appellants claim the second tract by ten years' limitation, since it also embraces McDonald's improvements in issue in the federal court. This claim is based upon the theory that section No. 13 must be moved north 890 varas, and that section No. 14 must be moved north that distance to tie with section 13. This theory makes the second tract a part of section No. 14. If, appellants should recover either tract sued for, the effect of the judgment in their behalf would be to destroy the C. T. Darby and the Evantha Scurry surveys.

The theory of appellee's plea in abatement was that all parties claiming land on the Scurry survey and Darby survey and section 13 and section 14 are necessary parties to this litigation, and the prayer was that appellants be ordered to make these claimants par-

ties to their suit; the plea in abatement named about 160 claimants as necessary parties. As stated above, the prayer was granted, and, when appellants refused to amend by making new parties, their suit was dismissed.

### Opinion.

■ This was a boundary suit and not an ordinary action in trespass to try title, though brought in that form. There was no issue as to title. The only issue was the correct location upon the ground of sections Nos. 13 and 14. If these sections are located on the contention of appellants, then the Scurry and Darby surveys are extinguished. If they are located on the theory of appellee, being the theory of the land office, then the Scurry and Darby surveys are validated, and all claimants to the four surveys are established in their claims, as the same are now fixed and established on the ground by the maps and plats of the land office. There are no adverse claims to any of this land, except as such contentions are based upon the location of the boundary lines of the several surveys; that is to say, when the boundary lines are correctly located, there will be no controversies as to title. These facts make this a boundary suit, as distinguished from the statutory actions of trespass to try title. Cox v. Finks, 91 Tex. 318, 43 S. W. 1; Schley v. Blum, 85 Tex. 551, 553, 22 S. W. 667; Steward v. Coleman County, 95 Tex. 445, 67 S. W. 1016, affirming (Tex. Civ. App.) 65 S. W. 383; Burnett v. Powell, 6 Tex. Civ. App. 39, 25 S. W. 1030 (see Id., 86 Tex. 382, 24 S. W. 788, 25 S. W. 17); Wright v. Bell, 94 Tex. 577, 63 S. W. 623 (see Bell v. Wright [Tex. Civ. App.] 59 S. W. 615; Id., 94 Tex. 407, 60 S. W. 873; Id. [Tex. Sup.] 63 S. W. 159).

■ Being a boundary suit, all persons claiming land on the four surveys are necessary parties [York v. Alley (Tex. Civ. App.) 25 S.W.(2d) 193; Gulf Production Co. v. Camp (Tex. Civ. App.) 32 S.W.(2d) 881], or proper parties, subject to be made parties to this litigation at the discretion of the trial court. This conclusion follows, because a judgment in favor of appellants against appellee, tying section No. 14 to section No. 13, would establish the location on the ground of the boundary lines of all four surveys, affecting adversely all claims to the four surveys; and a judgment creating a vacancy between sections Nos. 13 and 14 would affect adversely the claims to the land on three of the surveys. In 26 Tex. Jur. p. 46 et seq., it is said: "The rule of stare decisis has reference only to questions of law; it involves no element of estop-

pel, and it operates upon all persons, and not merely the parties to the particular proceedings and their privies. Thus when the Supreme Court or a Court of Civil Appeals—if the Supreme Court has denied an application for a writ of error—has once given a definite effect to a specific writing or a particular fact situation—as when it determines the true construction of a will or the validity of a deed or a judgment or fixes the boundaries of a particular survey—such determination is binding and conclusive in all subsequent suits involving the same subject-matter, whether the parties and the property are the same or not. This result is reached under and by virtue of the doctrine of stare decisis and not under the rule of res adjudicata."

Again in the same volume at page 307 it is said: "We have also seen that as a general proposition a judgment in respect of one parcel of land is not res judicata of a subsequent suit in respect of another parcel, but in this connection it should be remembered that by virtue of the doctrine of stare decisis a judgment of a court of final resort which determines the legal effect of a particular fact situation—such as a judgment fixing the boundaries of a survey—is final and conclusive in a subsequent suit wherein the same question arises, though neither the parties nor the subject-matter are the same. Thus when the Supreme Court has determined the location of the boundary line between two sections in a suit involving one of them, its decision is conclusive in a subsequent suit involving the other section."

The cited text of Texas Jurisprudence has support in the following Texas authorities: Porter v. State (Tex. Civ. App.) 15 S.W.(2d) 191; Wilson v. Giraud (Tex. Civ. App.) 234 S. W. 110; Benavides v. Garcia (Tex. Civ. App.) 283 S. W. 611; Blaffer v. State (Tex. Civ. App.) 31 S.W.(2d) 172.

It is no answer to the plea in abatement to say that appellee could have brought in all necessary or proper parties. The parties named in the plea in abatement were not necessary parties to protect either the interest of appellants or appellee. But, since the judgment on principles of stare decisis would affect all claimants to the four surveys, they ought to have their day in court. When their interest was called to the attention of the trial court, it was his duty—at least the power rested in his discretion—to direct appellants, who instituted this litigation and whose affirmative action placed in jeopardy the property rights of the other claimants, to bring them into court. This was the effect of

York v. Alley and Gulf Production Co. v. Camp, cited above.

The plea in abatement was not fatally defective because the residence of some of the claimants was not given in the plea in abatement nor because the plea suggested that there might be other claimants than those named therein. These defects could be called to the attention of the court only by special exceptions, which were not urged.

It follows that the judgment of the lower court should in all things be affirmed, and it is accordingly so ordered; however, without prejudice to the rights of appellants to institute new litigation if they so desire.