**GRIMES v. JORDAN.**

No. 4849.

Court of Civil Appeals of Texas.   Beaumont.

July 2, 1953.

Rehearing Denied July 22, 1953.

Dies & Anderson, Lufkin, for appellant.

R. C. Musslewhite, Lufkin, for appellee.

ANDERSON, Justice.

J. L. Grimes, the appellant, brought this suit against Mrs. Robert C. Jordan, the appellee, in the ordinary form of trespass to try title to a tract of land 30 x 74 feet in size and embracing parts of lots 9 and 10 in Block 1 of the High School Heights Addition to the City of Lufkin, in Angelina County, Texas, and also a part of what was originally depicted on the map or plat of said addition as an alley extending through Block 1. The defendant answered by plea of not guilty, and specially pleaded, in substance, that if it should develop that the deeds under which she claimed contained ambiguous descriptions of the land intended to be conveyed by them, and that some of the calls contained in such descriptions were inconsistent with other calls and, if given effect, would exclude the land sued for by plaintiff from the land described in the deeds under which defendant claimed, it was nevertheless the intention of the grantors in said deeds to convey and of the vendees to purchase the land described in plaintiff's petition, and that the inconsistent calls which would exclude said land were made through mutual mistake and should be rejected in favor of the calls which would include it.

Trial was to the court without a jury, and resulted in a judgment in favor of the defendant. From such judgment, the appellant has duly perfected his appeal to this court.

In response to plaintiff's request or motion, the trial court filed findings of fact and conclusions of law. These will be referred to during the course of this opinion, but they will not be set out in their entirety, for the findings of fact are, in many instances, nothing more than findings of uncontroverted facts.

At the time High School Heights Addition to the City of Lufkin was established, a map or plat of it was made and duly filed for record in the office of the County Clerk, and was recorded in the map records of Angelina County. This map or plat was placed in evidence by both the plaintiff and the defendant, and a reproduction of that portion of it showing Block 1 of the addition appears in the statement of facts. It reflects, and other evidence further substantiates, that Block 1 was originally subdivided into fourteen lots, numbered 1 through 14, each of which lots, with the possible exception of lot 14, was 55.5 feet wide (east and west) and 112 feet in depth (north and south). It also shows that lots 1 through 7 form a tier of lots which lie to the north of a tier of lots consisting of lots 8 through 14, and that these tiers of lots were originally separated by an alley 16 feet wide that extended through the block along a general east and west course.

The solid lines of the following plat show Block 1, its lots, and the alley, as originally laid out and as depicted on the map of the addition, while the broken lines and the letters are superimposed upon the plat merely as aids to a clearer presentation and understanding of the issues involved.

The land in litigation in this suit is represented by the area embraced within the four lines which connect the letters A, B, C, and D.

B. F. Snowden and his wife, Emma D. Snowden, acquired title to lots 5, 6, 7, 8, 9, and 10 in the aforesaid Block 1 by deed dated May 5, 1945. Under date of April 13, 1946, they executed and delivered to one Helen Price LaPrelle their general warranty deed wherein the land conveyed or undertaken to be conveyed was described as follows: "All that certain lot or tract of land out of Block 1 of the High School Heights Addition to the City of Lufkin, Angelina County, Texas, and being all of lot 5 and a part of lot 6 in said Block, being more particularly described as follows: Beginning at the N.E. corner of Lot 5; Thence in a southwesterly direction along the N.B. line of said Block 1 of Lots 5 and 6, a distance of 74 ft. to stake for corner in the N.B. line of Lot 6; Thence in a southeasterly direction parallel to the W.B. line of said Block 1, a distance of 150 ft. to stake for corner; Thence in a northeasterly direction, parallel with the N.B. line of said Block 1, a distance of 74 ft. to the S.E. corner of Lot 5; Thence in a northwesterly direction along the E.B. line of Lot 5 to the place of beginning."

The alley through Block 1, as depicted by the map of the addition, was never opened nor used, and under date of October 1, 1946, the City of Lufkin executed and delivered to B. F. Snowden and Mrs. Helen Denman LaPrelle a quitclaim deed, quitclaiming to them so much of the alley as lay between Lots 5, 6, and 7 and Lots 8, 9, and 10, and declaring it to be the intention of the city to close and forever abandon the alley.

Then, under date of October 2, 1946, B. F. Snowden and his wife executed and delivered to appellant, J. L. Grimes, and his wife, Lennie Grimes, a general warranty deed wherein the land conveyed or undertaken to be conveyed was described as follows: "All those certain tracts or parcels of land situated in the City of Lufkin, Angelina County, Texas, towit: Tract 1. All of Lots Five (5), Six (6), Seven (7), Eight (8), Nine (9) and Ten (10), in Block One (1) of the High School Heights Addition to the City of Lufkin, Texas, Except that portion of said lots which was conveyed by B. F. Snowden, et ux, to Helen Price LaPrelle by deed dated April 13, 1946, recorded in Vol. 117, Page 158, Deed Records of Angelina County, Texas, said portion being 74 ft. X 150 ft. Tract 2. A portion of the High School Heights Addition to the City of Lufkin, Angelina County, Texas, described as follows: That certain strip of land lying between Lots Five (5), Six (6) and Seven (7) and Lots Eight (8), Nine (9) and Ten (10) of Block One (1) of the said addition which is now designated upon the plat of said addition as a Sixteen (16) foot wide alley; Save And Except, however, a strip measuring 8 ft. North and South and 74 ft. East and West immediately South of and adjoining Lot 5 and part of Lot 6 heretofore conveyed by B. F. Snowden to Helen Price LaPrelle by deed dated April 13, 1946, recorded in Vol. 117, Page 158, of the deed records of Angelina County, Texas."

The appellee, Mrs. Robert C. Jordan, claims under Helen Price LaPrelle, through general warranty deeds from Mrs. LaPrelle and her husband bearing date of March 8, 1947, and September 3, 1947, respectively, and under B. F. Snowden and wife, through a quitclaim deed that also bears date of September 3, 1947. The deed of March 8 1947, from the LaPrelles contained the same property description as that which was contained in the deed of April 13, 1946, from B. F. Snowden and wife to Mrs. LaPrelle, the description first hereinabove quoted. The second deed from the LaPrelles and the quitclaim deed from the Snowdens both employed amended field notes to describe the premises conveyed, and the metes and bounds description contained in each of these instruments described the premises to which Mrs. Jordan is asserting title with an accuracy which has not been questioned. The deed of September 3, 1947, from the LaPrelles was given for the purpose, as expressed in the deed itself, of correcting the deed of March 8, 1947, and the property description therein contained.

This suit arose out of the inability of appellant and appellee to agree upon the proper construction to be given the deed of April 13, 1946, from B. F. Snowden and his wife to Helen Price LaPrelle, or upon the extent and boundaries of the land thereby conveyed.

Appellee, Mrs. Jordan, contends that by said deed the Snowdens conveyed to Mrs. LaPrelle, and that Mrs. LaPrelle subsequently conveyed to her, a lot 74 X 150 feet in area which included all of lot 5, parts of lots 6, 9 and 10, and all of the alley between lots 5 and 6 and lots 9 and 10 to the extent of the width of the lot claimed by her. A brief description of the lot contended for by her would be as follows: Beginning at the N.E. corner of Lot 5; Thence southwesterly along the N.B. line of Lots 5 and 6 a distance of 74 ft. to a point in the N.B. line of Lot 6; Thence southeasterly, parallel with the W.B. line of Block 1, 150 ft. to a point in Lot 9; Thence northeasterly, parallel with the N.B. line of Lots 5 and 6, 74 ft. to a point in the E.B. line of Lot 10; Thence northwesterly along the E.B. line of Lots 10 and 5 to the place of beginning. The area which would be thus bounded is represented on the plat by the area embraced within the four lines that connect the letters B, C, F and G.

Appellant, on the other hand, contends that by said deed the Snowdens only conveyed to Mrs. LaPrelle Lot 5 and a strip off the east side of Lot 6, and did not convey any part of the alley or of Lots 9 and 10. It is his position, in other words, that the lot reference contained in the description constituted the true description of the property intended by the parties to be conveyed, and that the call for the west boundary line to be 150 feet in length resulted from the mistaken assumption that the lots were 150 feet in depth instead of the 112 feet which they actually were, and should therefore be rejected as erroneous. He argues that only in this way can effect be given to the call for the south boundary line to run to the southeast corner of lot 5, parallel to the north boundary line of lots 5 and 6. Appellant also contends, of course, that only lot 5 and the strip off the east side of lot 6 necessary to make a lot 74 feet in width were excepted in the deed by which the Snowdens conveyed to him all of lots 5 through 10 except the portions of said lots theretofore conveyed to Mrs. LaPrelle. He concedes, apparently, the appellee owns the north one-half of the former alley abutting on lot 5 and the part of lot 6 which he recognizes her to be the owner of, but this seems to be on the theory that she acquired title to such part of the alley from the City of Lufkin.

It is true that if the west boundary line of appellee's property is to be given a length of 150 feet from the northwest corner of her property, as called for in the deed, and along the course called for, it will cross not only the south boundary line of lot 6 but the alley as well, and will terminate approximately 22 feet inside the north boundary line of lot 9 (point C on the plat). It is furthermore true that from the terminal point thus arrived at, the southeast corner of lot 5 (point H on the plat) cannot be reached by a line 74 feet long, nor by any line that is parallel to the north boundary lines of lots 5 and 6. Any line connecting the mentioned points would necessarily be longer than 74 feet, and if extended would intersect an extension of the north boundary lines of lots 5 and 6 a comparatively short distance from the northeast corner of lot 5. This is made apparent by the broken line connecting points C. H, and I on the plat.

It is evident, therefore, that the description in the deed from the Snowdens to Mrs. LaPrelle contained erroneous and contradictory or repugnant calls, and was and is ambiguous. The ambiguity, however, is not apparent on the face of the deed itself.

In so far as one can tell from a mere reading of the deed, all elements of the description, including references to lots, calls for course and distance, and calls for objects are harmonious and correct. The description only becomes uncertain when an attempt is made to apply it to the land conveyed as it actually existed at the time. Otherwise stated, extraneous evidence is necessary to disclose the ambiguity. It is therefore a latent and not a patent ambiguity as contended by appellant, and competent

extraneous evidence was admissible to explain it. Arambula v. Sullivan, 80 Tex. 615, 16 S.W. 436; Bell v. Wright, 94 Tex. 407, 60 S.W. 873.

Counsel for appellant do not contend that the description under discussion is legally insufficient to describe any land. They merely contend that it does not include as much land as is contended for by appellee. Both they and counsel for appellee recognize that certain parts of the description are erroneous; they differ only as to which parts. Both contend that the parts which they respectively conceive to be erroneous should be disregarded and the remaining portion of the description sustained. Both recognize, therefore, that, in the words of Justice Smedley, in Reserve Petroleum Co. v. Harp, 148 Tex. 448, 226 S.W.2d 839, 841: "The case is one for the application of the rule that the part of a description that is false will be disregarded or rejected as surplusage and the deed will be sustained as valid if, after the rejection of what is false, the remaining words of the description are sufficient to identify the land with certainty."

Which parts of the description are to be accepted as correct and which rejected as false depends upon which of them correctly describe the land the parties to the deed intended should be conveyed. Bowden v. Patterson, 51 Tex.Civ.App. 173, 111 S.W. 182, error refused; Pierson v. Sanger, 93 Tex. 160, 53 S.W. 1012; Holman v. Houston Oil Co., Tex.Civ.App., 152 S.W. 885, on subsequent appeal, Tex.Civ. App., 174 S.W. 886, error refused.

Resort having been properly had to oral evidence to show the intention of the parties, the construction to be given the deed is not a question of law only, but is a question of mixed law and fact to be determined by the trier of the facts. Alstin's Ex'r v. Cundiff, 52 Tex. 453; Brown v. Chambers, 63 Tex. 131. This court is therefore bound by the findings of the trial court as to the intention of the parties and which parts of the description are false if the findings are supported by sufficient competent evidence. City State Bank in Wellington v. Wellington Independant School Dist., Tex.Civ.App., 173 S.W.2d 738, affirmed 142 Tex. 344, 178 S.W.2d 114; Logan v. Bush, Tex.Civ.App., 220 S.W.2d 669, Ref. n. r. e.

The trial court, in substance, found that: 1.) B. F. Snowden and wife intended by the deed of April 13, 1946, to convey to Helen Price LaPrelle, and the latter intended to purchase a strip of land 74 feet wide and 150 feet long, the identical land now claimed by appellee. 2.) The parties intended that the west line of the strip of land should be 150 feet long, and that the south line thereof should be 150 feet southward from and parallel to the north boundary line of Block One. 3.) Calls contained in the description which are inconsistent with the lot's being 74 feet wide and 150 feet long, and with its south line being 150 feet from and parallel with the north line of Block 1 were included through a mutual mistake of the parties to the instrument. 4.) It was the intention of both the grantors and the grantees in the deed of October 2, 1946, from B. F. Snowden and wife to appellant and wife to except from the effects of that deed a strip of land 74 feet wide and 150 feet long, the indentical land now claimed by appellee. 5.) The land now claimed by appellee was pointed out on the ground to appellant and wife at the time they purchased from B. F. Snowden and wife as a strip 74 feet wide and 150 feet long, and appellant and wife were informed that it was not to be conveyed to them. 6.) It was not the intention of B. F. Snowden and wife to convey to appellant and wife, nor the intention of the latter to purchase, any part of the land now claimed by appellee. 7.) The recitation contained in the deed of October 2, 1946, from B. F. Snowden and wife to appellant and wife to the effect that the grantors were conveying all of the alley except an eight foot strip across the south end of lot 5 and a part of lot 6 was included in the deed through mutual mistake of the parties. 8.) At the time they purchased, appellant and wife had actual notice of the metes and bounds of the land now claimed by appellee. 9.) Both at the time Mrs. LaPrelle purchased and at the time appellant and his wife purchased, stakes were actually in existence

at the four corners of the plot of land now claimed by appellee.

No pretense is made that the numbers used in connection with the foregoing summary coincide with the numbers of the original findings of fact. The numbered paragraphs of the original findings on which the foregoing has been based are 4, 8, 9, 10, 11, 12, and 16. The numbers 5 and 6 were not used to designate any of the original findings; apparently through oversight.

By his Points 3 through 8 and by his Point 12, appellant attacks virtually all of the foregoing findings. The basis of attack, with one or two exceptions to be noted, appears to be that the findings are contrary to the construction which the law requires be placed on the deed, and are not supported by the evidence. The additional ground that they are without support in the pleadings is urged against the finding that stakes actually existed at the four corners of the land now claimed by appellee at the time Mrs. LaPrelle purchased from the Snowdens, as well as at the time appellant and his wife purchased, and the finding that the land now claimed by appellee was pointed out on the ground to appellant and his wife before they purchased as land to be excepted from the conveyance to them.

The two findings which are alleged to be without support in the pleadings are not findings on any ultimate issue in this case, but are findings on mere matters of evidence. They may be disregarded without affecting the disposition to be made of the appeal, and it is therefore immaterial whether they are supported by either the pleadings or the evidence. We are of the opinion, however, that if they were material, they would find support in the defendant's plea of not guilty.

■ We find the evidence sufficient to support the remaining fact findings.

B. F. Snowden, the grantor in the deeds to both Mrs. LaPrelle and appellant and his wife, testified upon the trial, his testimony being substantially as follows: He sold Mrs. LaPrelle a strip of land 74 X 150 feet in area and intended to convey to her a strip of land having those dimensions. He intended the west line to be 150 feet long and for the south line to run parallel to the north line of lots 5 and 6; he did not intend to convey a triangular lot. At the time he conveyed to Mrs. LaPrelle, he was unaware there was an alley through Block 1, but found this out for the first time while negotiating with appellant, and even then did not know where it was located on the ground. At the time he conveyed to Mrs. LaPrelle, he probably thought lots 5 and 6 were 150 feet long, but he nonetheless intended to convey her a lot 74 feet wide and 150 feet long. He informed appellant while negotiating with him that he had already sold Mrs. LaPrelle a lot 74 X 150 feet in area, and pointed the lot out on the ground to appellant. A hedge ran along the west line of Mrs. LaPrelle's lot and then turned west. He told appellant Mrs. LaPrelle's southwest corner was about where the hedge turned. He never intended to convey to appellant any part of the strip of land now claimed by appellee.

Appellant admitted from the witness stand that he knew at the time of accepting it that his deed recited that the portion of the lots excepted was 74 X 150 feet in area, but said he thought at that time that lots 5 and 6 were 150 feet in length. He also admitted that he and Mr. Snowden went upon the land and looked at it while they were negotiating their trade. He was not sure whether Mr. Snowden showed him stakes at the southwest and southeast corners of the LaPrelle land, but did not believe so. He did recall, however, that Mr. Snowden showed him the hedge along the west line of the LaPrelle property.

The appellee, Mrs. Jordan, testified that when she purchased the land from Mrs. LaPrelle, she had it surveyed, and found old stakes standing at all four corners of the tract she now claims. She said appellant did not question the location of her south line nor contend for any part of the land she claims until after she tried to get him to sign a quitclaim deed when she was trying to sell the property.

The foregoing oral evidence, when taken in connection with the deeds themselves,

left the trial court little or no alternative, in our opinion, to finding as it did with regard to the intentions of the parties.

Appellant's contention that the fact findings are contrary to the construction which the law requires be put on the deed in question has already been sufficiently answered by our holding that the description contains repugnant calls and is ambiguous. Appellant's Points 3 through 8 and Point 12 are therefore overruled.

By his second point, appellant assigns as error the rulings of the trial court in permitting the witness Snowden to testify as to his intentions and the property he intended to convey to Mrs. LaPrelli. The objections made when the evidence was offered were:

"The plaintiff objects to the witness, B. F. Snowden, orally testifying to any facts as to what his intention might or might not have been when he conveyed to Mrs. La-Prelle, for the reason that the evidence of his intention is best expressed by and in the written instruments or deed which he executed and delivered to Mrs. LaPrelle; that any parol or oral evidence attempting to vary the terms of the written instrument would be inadmissible, hearsay, and violate the best evidence rule, and, further, that any ambiguities which may exist in said deed are patent and not latent, and, therefore, oral evidence to vary the terms under the law is inadmissible."

What property the witness intended to convey by the deed was a material fact to be proved on the trial. He was not disqualified by law from testifying to what his intention in that respect had been, and, in the absence of some other valid ground for excluding it, the evidence was admissible. Hamburg v. Wood & Co., 66 Tex. 168, 18 S.W. 623; Sweeney v. Conley, 71 Tex. 543, 9 S.W. 548; Wade v. Odle, 21 Civ.App. 656, 54 S.W. 786, error refused. The evidence obviously was not hearsay, and the remaining grounds of the objection are rendered invalid by our holding that the ambiguity in the deed is a latent ambiguity, and that competent extraneous evidence was admissible to explain it.

The fact findings of the trial court do not rest alone upon an application of the rules of construction to the language of the deed, but have support in the other evidence. There is therefore no occasion for us to enter into a discussion of the rules of construction. It is probably not amiss, however, for us to call attention to the fact that those rules are not inflexible and invariable, and that no class of calls absolutely controls another where such other class more truly indicates from the evidence the true location of the land in controversy. Titterington v. Trees, 78 Tex. 567, 14 S.W. 692; Linney v. Wood, 66 Tex. 22, 17 S.W. 244. "A supposititious call, made upon an erroneous belief as to the location of an object, will not prevail over a call for course and distance." 7 Tex.Jur. 172; New York & T. Land Co. v. Thomson, 83 Tex. 169, 17 S.W. 920.

Appellant argues that the call for all of lot 5 and part of lot 6 controls, as a matter of law, the calls for course and distance, and in support of this argument cites the case of Arambula v. Sullivan, supra. The case is no doubt authority for the proposition that in applying the ordinary rules of construction to a description of land a call for a lot is of more dignity and will usually be given greater effect than a call for course and distance, but the decision of the court in that case did not turn on any hard and fast application of this rule. It was merely used in connection with the other evidence before the court in arriving at the conclusion that it was the intention of the parties in that particular instance to convey by lots and that the calls for distance were the false parts of the description.

Being bound as we are by the fact findings of the trial court, and being of the opinion that they are supported by competent evidence, it necessarily follows that appellant's Point 1, which assigns error to the judgment of the court, must be overruled.

By other points contained in their brief, counsel for appellant assign error to certain of the trial court's findings with reference to the effect of the deeds to appellee, but in view of our holding that the deed to

Mrs. LaPrelle, when construed in the light of the evidence, was sufficient to convey the land appellee has been adjudged the owner of, these other assignments become immaterial.

Finding no error, the judgment of the trial court is affirmed.

Affirmed.